## UNITED STATES ex rel. SCHOLS v. HUGHES, District Director of Immigration and Naturalization for the Port of Philadelphia.

### No. M—5698.

District Court, D. New Jersey.

Dec. 9, 1938.

Francis G. Homan and Howard L. Miller, both of Camden, N. J., for relator.

John J. Quinn, U. S. Atty., of Red Bank, N. J., and W. Orvyl Schalick, Asst. U. S. Atty. of Camden, N. J., for United States of America.

AVIS, District Judge.

The relator, an alien, has been ordered deported from the United States to Holland, upon the charge that he has remained in the United States for a longer time than permitted under the immigration laws.

Relator was born in Holland May 20, 1896, and, after shipping to various places, including the United States, as a seaman, finally on March 6, 1926 settled in the United States and has remained here continuously since that time.

It appears by the testimony of relator that he left his native country Holland in the spring of 1914; that at that time he sailed as a seaman on the British Ship Vimera for a trip around the world; that on this trip he was in New York for five months; that he next went to Melbourne, Australia, and to other places in that country, and from there to Chile and back to Liverpool, England; that in 1916 he went as a seaman to Mobile, Alabama, arriving there about Christmas time of the year 1916; that from there he went back to Liverpool; that in May 1917 he shipped as a seaman on the Steamship Nembre from Liverpool to New York; that he deserted his ship on this trip, being admitted to the United States as a seaman only; that he remained in the United States until December 1918 when he went to sea on the ship Eastern Chief, sailing for Liverpool; that from there he went back to the United States, arriving at Newport News, Virginia, on March 9, 1919; that he was admitted as a member of the crew; that he sailed from Newport News on the Bugaya on October 13, 1919, for Antwerp, Belgium, and returned to the United States on the same ship on December 6, 1919, arriving at Norfolk, Virginia, and was admitted as a seaman; that from that place he sailed on the F. R. Kellogg for Buenos Aires, and returned to the United States on August 14, 1922; that on this occasion he was admitted to the United States as a seaman; that next he sailed from Philadelphia, Pennsylvania, on the Steamship Corsan to Mediterranean countries and returned to the United States on February 5, 1923 on the same ship; that at this time he was admitted as a seaman; that he next sailed on the Steamship New Jersey to Antwerp, London, and coastwise, and landed in Port Arthur, Texas, on August 8, 1923, and was admitted as a seaman; that he next sailed on the Ayrian from Port Arthur to Tampico, Mexico, and coastwise, returning to the United States on November 7, 1924, and was admitted as a seaman; that the next trip was on the Steamship Cape Ann, out of Philadelphia, Pennsylvania, on February 9, 1926, to Tampico, Mexico, returning to Philadelphia on

280

March 6, 1926, and was admitted as a seaman, and that he has remained in the United States ever since.

Some evidence was introduced by relator with relation to his application for citizenship in which he related that a clerk in the office of the Naturalization Bureau in Philadelphia advised relator that if he would ship as a seaman to a foreign port and return and pay a head tax, it would enable him to obtain his citizenship papers. Great stress has been laid upon this fact as excusing the relator from the alleged entry upon which deportation proceedings were instituted.

As a matter of fact relator entered the United States from a previous voyage, returning to the United States on November 7, 1924, which was after the passage and approval of the 1924 act, § 14, 8 U.S.C.A. § 214.

The earlier voyage would constitute a new entry and would justify deportation, if proceedings were had thereunder. However, there is no principle of law referred to, nor have I been able to find any, which would justify the Court in determining that the relator could be excused by reason of some unofficial direction, even though communicated to him by a person employed in the Immigration or Naturalization Department of the Government.

It must be held that he entered the United States irregularly; that he was never admitted permanently, and that under the 1924 act he is subject to deportation. See United States ex rel. Stapf, v. Corsi, 287 U.S. 129, 53 S.Ct. 40, 77 L.Ed. 215.

The writ of habeas corpus will be dismissed, and the relator remanded to the custody of the Commissioner of Immigration for deportation.